UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
     v.                        )     C.A. No. I:07-cv-00060
                               )
EXXONMOBIL CORPORATION, et al.)
                               )
          Defendants.          )

<u>ORDER</u>

William E. Smith, United States District Judge.

     Before this Court are the motions of Brodie Mountain Ski Area,

Inc. and J.W. Kelly's Enterprises, Inc., ("Brodie") to intervene

in, and remand to the Environmental Protection Agency, the actions

titled <u>United States of America v. ExxonMobil Corp., et al.</u>, and

<u>State of New Hampshire v. ExxonMobil Corp., et al.</u>, consolidated at

C.A. No. 1:07-cv-00060 (the "Action").  For the reasons set forth

below, this Court will grant Brodie's Motion to Intervene for the

limited purpose of objecting to entry of the Consent Decree in this

matter.[1]  Brodie's Motion to Remand is denied.

---

[1] To the extent that Brodie also used its Motions to Intervene
and Remand as a means of objecting to the substance of the proposed
Consent Decree, this Court notes that such objection is premature.
Although the Plaintiffs have indicated their intent to move for
entry of the Consent Decree, they have not yet so moved.  Brodie
will have ample opportunity to argue its position and object to the
Consent Decree upon being granted intervention.  The Court does
not, however, consider those matters to be before it at this time.

Background

The Action into which Brodie seeks to intervene was brought by the Plaintiffs United States of America and the State of New Hampshire pursuant to CERCLA §§ 106, 107, 42 U.S.C. §§ 9606 and 9607 for injunctive relief and reimbursement of response costs at the Beede Waste Oil Superfund Site located in Plaistow, New Hampshire (the "Site"). The Defendants[2] to this Action are certain public and private entities who were identified by Plaintiffs as potentially responsible parties ("PRPs") and with whom Plaintiffs have negotiated a settlement that resulted in the Consent Decree lodged with the Court on April 16, 2007. Brodie is a non-settling PRP who seeks to intervene in the Action, alleging that the proposed Consent Decree is fundamentally unfair in its make-up and in its effects on Brodie's financial liability for the remaining response costs.

The factual allegations presented by the respective parties to this intervention regarding the process leading up to the Consent Decree are not entirely consistent, nor are they relevant to this Motion. However, a brief overview of these facts is helpful to set the stage for the legal analysis that follows. The Site was the location of several oil-related operations from the 1920s until the mid-1990s. In 1996 it was placed on a priority list of hazardous

---

[2] The Defendants consist of ninety-six parties and five federal agencies, all of whom have been deemed *de minimus* contributors by the EPA.

waste sites posing threats to public health, welfare and the environment. Over the following eight or nine years, investigations were conducted as to the sources of contamination, cleanup options were evaluated, and a remedial action plan was finalized, assessing the total estimated cleanup cost at $48 million. In order to assess the individual liabilities of identified PRPs, the EPA created a so-called "Waste-in List," that purported to rank PRPs according to their respective amounts of contaminants contributed.[3]  Pursuant to the EPA's calculations, Brodie was ranked the second highest contributing PRP.

Although PRPs were given an opportunity to object to the EPA's ranking system, Brodie's objections apparently went unheeded. As a result, according to Brodie, it was not invited to participate in the *de minimus* settlements which lead to the Consent Decree at issue. Instead, in January, 2007, the United States filed suit against Brodie and other non-settling PRPs to recover response costs. See United States v. Davenport Realty Trust, et al., No. 1:07-cv-10-PB (D.N.H. filed January 8, 2007). As a non-settling PRP, Brodie faces joint and several liability in the Davenport action. Furthermore, as will be discussed below, while CERCLA provides that "any person may seek contribution from any other person who is liable or potentially liable," Brodie may not seek

---

[3] Brodie asserts that the method used by the EPA to create the "Waste-in List" was scientifically invalid, arbitrary, capricious, and prejudicial.

contribution from settling PRPs, as CERLCA specifically exempts from claims for contribution any party who resolves its liability through settlement.  See 42 U.S.C. § 9613, CERCLA §§ 113(f)(1),(2).

On April 16, 2007, Plaintiffs lodged the Consent Decree with the Court.   Plaintiffs filed official notice in the Federal Register of the proposed settlement on May 3, 2007, triggering the thirty-day period during which non-settling parties may submit comments on the proposed Consent Decree.  See 42 U.S.C. § 9622(d). Plaintiffs have indicated their intent to move this Court for approval of the Consent Decree, though as of the time of the hearing on this matter, they had not yet done so.

<u>Analysis</u>

In this case, Brodie seeks to intervene as a matter of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure and 42 U.S.C. § 9613(i); CERCLA § 113(i), or, in the alternate, through permissive intervention afforded by Rule 24(b) of the Federal Rules.  The standards for intervention under Rule 24(a) and CERCLA are nearly identical.[4]

---

[4] Rule 24(a) provides:

Upon timely application anyone shall be permitted
to intervene in an action: (1) when a statute of
the United States confers an unconditional right to
intervene; or (2) when the applicant claims an
interest relating to the property or transaction
which is the subject of the action and the
applicant is so situated that the disposition of
the action may as a practical matter impair or
impede the applicant's ability to protect that

Under both sections, a person may intervene as a matter
of right if he or she satisfies a four part test: (1) the
party's motion must be timely; (2) the party must assert
an interest relating to the property or transaction which
is the subject of the action; (3) the party must be so
situated that without intervention the disposition of the
action may, as a practical matter, impair or impede its
ability to protect its interest; and (4) the party's
interest must not be adequately represented by other
parties.

Arizona v. Motorola, Inc., 139 F.R.D. 141, 144 (D. Ariz. 1991); see

also United States v. Union Elec. Co., 64 F.3d 1152, 1158 (8th Cir.

1995).   The standards differ in one way, however - under CERCLA,

"the burden to show that existing parties adequately represent the

prospective intervenor's interests is allocated to the President or

the State under § 113(i), whereas under Fed. R. Civ. P. 24(a)(2)

the party seeking to intervene has the burden to show that no

existing party adequately represents its interests."   Union Elec.,

64 F.3d at 1158.

Defendants assert that Brodie's Motion to Intervene is

premature, because Defendants have not yet moved for entry of the

_____

interest, unless the applicant's interest is
adequately represented by existing parties.

Similarly, CERCLA § 131(i)provides:

[A]ny person may intervene as a matter of right
when such person claims an interest relating to the
subject of the action and is so situated that the
disposition of the action may, as a practical
matter, impair or impede the person's ability to
protect that interest, unless the President or the
State shows that the person's interest is
adequately represented by existing parties.

5

Consent Decree.  This Court agrees with Defendants' reasoning that Brodie's substantive objections and accompanying Motion to Remand are indeed premature.  However, Brodie's Motion to Intervene so that it might formally object to entry and approval of the Consent Decree once Defendants have so moved, is timely.  Defendants lodged the Consent Decree with the Court on April 16, 2007 and published notice in the Federal Register soon after.  In response, Brodie timely filed comments in response to the Notice, and filed its Motion to Intervene on June 6, 2007.  Considering the totality of these circumstances, this Court considers the instant Motion as satisfying the timeliness requirement.  <u>See</u> <u>generally</u> <u>United States</u> <u>v. Alcan Aluminum, Inc.</u>, 25 F.3d 1174, 1181-82 (3d Cir. 1994) (considering as timely motion for intervention made soon after the filing of the Consent Decree with the court, particularly in light of the totality of circumstances whereby the potential intervenor took all reasonable steps to protect its interests); <u>see also</u> <u>Union</u> <u>Elec.</u>, 64 F.3d at 1158-59 ("Whether a motion to intervene is timely is determined by considering all the circumstances of the case."). Furthermore, despite Defendants' assertion at the hearing on this matter that intervention would slow and hinder the clean-up process at the Site, "[t]he question for determining the timeliness of the motion to intervene is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention

6

itself will cause the nature, duration, or disposition of the lawsuit to change." Union Elec., 64 F.3d at 1159.

For purposes of establishing a right to intervene, an applicant must have a direct - as opposed to tangential or collateral - interest in the litigation, and that interest must be recognized, substantial, and legally protectable. Union Elec., 64 F.3d at 1161. "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." Id. at 1162. Here, the interest at issue for Brodie is its right to contribution granted by CERCLA § 113(f)(1), a right that, as to the Defendants to this Action, will be extinguished upon entry of the Consent Decree. See Motorola, 139 F.R.D. at 145 ("even if the settlor pays less than its proportionate share of liability, the non-settlors, being jointly and severally liable, must make good the difference"). Courts are split on the issue of "[w]hether an interest in contribution claims is sufficiently protectable, rather than excessively 'speculative' or 'contingent,' to support intervention in an action under CERCLA." Union Elec., 64 F.3d at 1162. The First Circuit has not addressed the issue.[5]

─────────────

[5] In In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution, 712 F. Supp. 1019 (D. Mass. 1989), the District Court for the District of Massachusetts denied a motion to intervene filed by the National Wildlife Federation. There, the National Wildlife Federation sought permissive intervention, and purported to represent the interests of its members who lived in the New Bedford Harbor area who believed that the EPA was not

For those courts that have ruled against intervention by non-settling PRPs, the legislative history and intent of CERCLA has been a guiding force.  In <u>United States v. Vasi</u>, Nos. 5:90 CV 1167, 1168, 1991 WL 557609, at *3 (N.D. Ohio March 6, 1991), for example, the Court held "from an examination of the legislative history behind Section 113(i), and from a consideration of the overall purpose behind CERCLA, that non-settling [PRPs] do not have an automatic right to intervene.[6]  The <u>Vasi</u> court, and the decision in <u>Motorola</u>, which likewise denied to non-settling PRPs the right to intervene in a Consent Decree, both rely on CERCLA's inherent "risk of disproportionate liability" intended to foster early settlement, as sufficient reason to deny intervention.  <u>Motorola</u>, 139 F.R.D. at 145; <u>Vasi</u>, 1991 WL 557609, at *4; <u>United States v. Cannons Eng'g Corp.</u>, 899 F.2d 79, 92 (1st Cir. 1990) ("Disproportionate liability . . . is an integral part of the statutory plan.").  Such courts point to CERCLA § 122(d)(2), the thirty day period for public comment, as support for the proposition that § 113(i)was not intended "to be used as a vehicle to hamper the settlement

---

adequately representing their interests in the cleanup of their community.   The interests at stake in that action differ substantially from the interests of non-settling PRPs in a recovery action, and thus involve an entirely different analysis.

[6] The <u>Vasi</u> court found that "the real persons who Congress were attempting to protect through enactment of Section 113(i)are those who live in close proximity to hazardous waste sites." <u>United States v. Vasi</u>, Nos. 5:90 CV 1167, 1168, 1991 WL 557609, at *3 (N.D. Ohio March 6, 1991)

process," and instruct non-settling PRPs that § 112(d)(2) provides them with their only opportunity to challenge a proposed consent decree. <u>Vasi</u>, 1991 WL 557609, at *4.

Based on CERCLA's "statutory scheme favoring early settlements and joint and several liability," some courts have determined that non-settling PRPs have "[a]t best," "remote economic interest that is insufficient to support intervention." <u>Motorola</u>, 139 F.R.D. at 146.; <u>Vasi</u>, 1991 WL 557609, at *5 (potential contribution interest is merely a contingency, and is not recognized by the substantive law as belonging to or owned by the potential intervenor); <u>United States v. ABC Indus.</u>, 153 F.R.D. 603, 607 (W.D. Mich. 1993). In these cases, courts have relied on their perception that the overarching legislative intent behind CERCLA compelled the conclusion that non-settling PRPs lack the "direct, non-contingent, substantial and legally protectable" interest necessary for intervention. <u>Motorola</u>, 139 F.R.D. at 144. Thus, these courts have avoided the more fact-intensive inquiry into the nature of a putative intervenor's contribution claim and how such a claim would be affected by the proposed consent decree.

The Eighth Circuit in <u>Union Elec.</u> saw it differently when it reversed a district court decision that followed the reasoning of cases such as <u>Vasi</u>, <u>Motorola</u>, and <u>ABC Industries</u>. As the <u>Union Elec.</u> Court noted, the plain meaning of CERCLA § 113(i) unambiguously allows intervention by "any person" who meets the

Case 1:07-cv-00060-WES   Document 35   Filed 12/20/07   Page 10 of 14

requirements of the statute. <u>Union Elec.</u>, 64 F.3d at 1165; <u>see also</u> <u>United States v. Acton Corp.</u>, 131 F.R.D. 431, 433 (D.N.J. 1990). The statute contains no restriction on persons "seeking to intervene in consent decree litigation to preserve contribution claims under § 113(f)(1). Nor does the court find any 'patent absurdity' or 'a result demonstrably at odds with the intentions of [the] drafters'" in allowing intervention. <u>Union Elec.</u>, 64 F.3d at 1165 (quoting <u>United States v. Ron Pair Enter.</u>, Inc., 489 U.S. 235, 241 (1989)). Accordingly, where other courts have relied on their perception of overall legislative intent and policy-based justifications to foreclose further substantive analysis of claims for intervention, the <u>Union Elec.</u> court focused on the plain language of CERCLA and applied it in the context of its underlying legislative policy.

The <u>Union Elec.</u> court, citing the language of CERCLA, found that a "contribution interest created by § 113(f)(1) is directly related to the subject matter of the litigation, because it may be asserted 'during or following' that litigation, and arises from the liability or potential liability of persons as the result of that litigation." 64 F.3d at 1166 (quoting CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1)). "That interest is also substantial and legally protectable: CERCLA § 113(f)(1) itself provides for legal protection of the interest in the primary litigation by providing for contribution claims." <u>Id.</u> Intervention is warranted, then,

10

precisely because "[t]he threat of cutting off contribution rights
of non-settling PRPs creates a direct and immediate interest on the
part of non-settling PRPs in the [Consent Decree] litigation." Id.
at 1167.   This Court agrees that "no finding of liability is
required, nor assessment of excessive liability, before the
contribution interest arises.   Only the *recovery* on a contribution
claim must await the outcome of this or further litigation, not the
right to bring such a claim."   Id.

Having determined that Brodie's motion is timely and involves
a protectable interest, the Court must address the relatively
straightforward issues of whether Brodie's interests may be
impaired by the Consent Decree litigation and whether the existing
parties adequately represent Brodie's interests.   Pursuant to §
113(f)(2), settlement "could bar or reduce the monetary value of
the contribution claims of the prospective intervenors against the
settling PRPs." Union Elec., 64 F.3d at 1167.   On this issue
alone, Brodie's interests arguably may be impaired by entry of the
proposed Consent Decree.   Additionally, Brodie challenges the
fairness of the formula used by the EPA to rank the contribution
interests of PRPs, and, correspondingly, used to determine
eligibility of de minimus contributors to take part in this Action.
As such, Brodie's ability as a non-settling PRP to recoup excessive
allocation of liability by way of contribution claims will be cut
off upon entry of the Consent Decree.   See id. at 1168.   Taking the

11

above into consideration, for intervention purposes only, this Court holds that Brodie has presented a protectable interest that may be impaired by entry of the Consent Decree.

Inadequate representation, the final precondition for intervention, requires comparison of Brodie's interests with those of the current parties. <u>Id.</u> at 1169. Simply put, in this Action, the settling PRPs seek to cut off Brodie's contribution interest, whereas Brodie seeks to prevent the same from happening through entry of what it considers to be an unfair Consent Decree. Therefore, their interests inherently are at odds. Likewise, it is axiomatic that Plaintiffs, who crafted and put forward the very Consent Decree considered to be unfair and unreasonable by Brodie, do not represent Brodie's particular interests. While Plaintiffs may purport to represent all citizens of the United States, "[t]he interests of the prospective intervenors are narrower and not subsumed by the general interest of the United States in providing for the clean up of polluted sites." <u>Id.</u> At 1170. Thus, it cannot be said that Plaintiffs here, by virtue of their overarching duties, have Brodie's specific interests at heart.

Although CERCLA § 122(d)(2) affords all persons the opportunity to comment on a proposed consent decree, the government, while it must consider those comments, is not required to act on them or represent the interests of their authors before this Court. Thus, while Brodie has in this case provided comments

12

pursuant to § 122(d)(2), and this Court will have the opportunity
to review those submissions, the Plaintiffs are under no obligation
to advocate for Brodie's interests as expressed therein.   In sum,
regardless of whose burden it is to establish adequacy of the
representation, it is clear that the competing interests at stake
here make adequate representation of Brodie's interests by any of
the existing parties impossible.

By granting Brodie's Motion to Intervene for the limited
purpose of objecting to the proposed Consent Decree, this Court is
neither distinguishing nor diverging from the First Circuit's
decision in <u>Cannons</u>, where Judge Selya, writing for the Court,
held that non-settling PRPs have no right to participate in the
settlement process in a CERCLA action.   899 F.2d at 93 ("The CERCLA
statutes do not require the agency to open all settlement offers to
all PRPs.").   Rather, <u>Cannons</u> bolsters this Court's holding that
Brodie's involvement in the underlying matter be confined to its
objection to the Consent Decree, and supports this Court's denial
of Brodie's request for remand to the EPA, with orders that it be
included in the settlement.   <u>See id.</u> ("So long as it operates in
good faith, the EPA is at liberty to negotiate and settle with
whomever it chooses.").   Finally, this Court cautions Brodie that
it faces a high hurdle in objecting to the proposed Consent Decree,
and Brodie should in no way consider this Court's granting of its
motion as implying that it will be successful in opposing the

13

Consent Decree.   See id. at 84 ("approval of a consent decree is committed to the trial court's informed discretion," and "[w]hile the district court should not mechanistically rubberstamp the agency's suggestions, neither should it approach the merits of the contemplated settlement *de novo*").   Put simply, Brodie should have a seat at the table, and an opportunity to speak its piece, but does not have veto power over the final settlement.

For all of the reasons set forth above, Brodie meets the requirements for intervention under the nearly identical requirements of Rule 24(a)(2) and CERCLA § 113(i), and may formally intervene in this Action for the limited purpose of objecting to entry and approval of the Consent Decree.


It is so ordered.


_William E. Smith_
William E. Smith
United States District Judge
Date: 12/20/07

14